S. LANE TUCKER
United States Attorney

SETH M. BEAUSANG
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: seth.beausang@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  vs.<br><br>2024 KTM 690SMC-R MOTORCYCLE, VIN: VBKLSV401RM758741, APPROXIMATELY $16,350 IN U.S. CURRENCY, and APPROXIMATELY $35,020 IN U.S. CURRENCY,<br><br>      Defendants. | No.<br><br>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

Plaintiff, United States of America, by and through counsel, alleges the following:

### I. NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6) for the forfeiture of the Defendant *in rem*.

2. The Defendant *in rem* is comprised of:

    a. a 2024 KTM 690SMC-R motorcycle, VIN: VBKLSV401RM758741, seized from Northern Power Sports in Fairbanks, Alaska, on April 2, 2024;

    b. approximately $16,350 in U.S. currency seized from 1215 Bunnell Street, Apt. 31, Fairbanks, Alaska, on April 1, 2024; and

    c. approximately $35,020 in U.S. currency seized from Alaska Mini Storage, Building 5, Unit 9, 1010 Wembley Ave., Fairbanks, Alaska on April 5, 2024.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1395 because the Defendant *in rem* was seized within the District of Alaska.

## III. RELEVANT FACTS

5. In or around 2024, the Fairbanks High Intensity Drug Trafficking Areas (HIDTA) Taskforce identified Ike Deangelo COFEY Sr as a local narcotics dealer operating out of Fairbanks, Alaska.

6. Law enforcement officers identified COFEY's primary residence as 1215 Bunnell Street, Apt. 31, Fairbanks, Alaska.

7. In late-February 2024, officers surveilled COFEY's residence and observed a high volume of short-term foot traffic coming and going from the exterior door that leads to COFEY's apartment.

8. In March 2024, a Confidential Source (CS) conducted two controlled purchases of methamphetamine from COFEY at his residence.

9. On April 1, 2024, officers served a federal search warrant for COFEY's residence at 1215 Bunnell Street, Apt. 31.

10. During the search, officers located two safes in COFEY's bedroom.

11. COFEY provided the passcode for the safes and told officers there would be a gun in one of them.

12. In the larger of the two safes officers located miscellaneous magazines and ammunition and approximately $16,350 in U.S. currency.

13. In the smaller safe, officers located a Smith and Wesson handgun.

14. In the residence, officers found paperwork related to the purchase of a 2024 KTM 690SMC-R motorcycle (the "motorcycle") from Northern Power Sports for $14,247.00.

15. Officers involved in this investigation know based on their training and experience that trafficking controlled substances is a cash business, and frequently very lucrative. Drug traffickers commonly carry large amounts of currency on their person or maintain a large amount of currency in a location readily available to them in order to purchase or restock illicit drugs for distribution.

15. Officers involved in this investigation also know based on their training and experience that drug traffickers often own, possess and/or use firearms as a means of facilitating their illegal drug activities. These firearms are often kept in close proximity to the trafficker's narcotics supply and/or cash proceeds acquired from the sale and

distribution of illegal controlled substances and used to protect the drugs and proceeds from theft by other criminals.

16. Officers also recovered Night Owl and Motorola Digital Video Records from COFEY's residence. Officers have reviewed the video footage which appears to show COFEY engaging in numerous cash sales of controlled substances at his residence.

17. Officers also recovered from COFEY's residence approximately 1,000 marijuana joints that were rolled and packaged for sale.

18. On April 2, 2024, officers traveled to Northern Power Sports and interviewed a salesperson about the purchase of the motorcycle.

19. The salesperson stated that COFEY had purchased the motorcycle for cash. The salesperson further stated that the motorcycle was still in the custody of Northern Power Sports because COFEY had provided several thousand dollars of aftermarket parts to be installed on the motorcycle. The salesperson stated that COFEY had the motorcycle registered to his girlfriend Leslie Diehl-Lewis. The salesperson stated that at no time during the purchase or payments of the motorcycle was Diehl-Lewis present or involved. Officers seized the motorcycle.

20. Diehl-Lewis is COFEY's girlfriend and mother of his child, but they have separate apartments.

21. Officers involved in this investigation know based on their training and experience that drug traffickers often title assets purchased with drug proceeds in the names of friends and family.

22. On or about April 4, 2024, officers listened to jail calls between COFEY and

Diehl-Lewis. They discussed a "secret" place where Diehl-Lewis would find enough money to post COFEY's bail, which was set at $35,000. They further discussed a storage unit that they believed the police could not search.

23. Officers located a storage unit at Alaska Mini Storage, 1010 Wembley Ave., Building 5, Unit 9, that Diehl-Lewis and COFEY were renting together.

24. Officers learned that the storage unit was last accessed on March 27, 2024.

25. Officers also heard COFEY tell Diehl-Lewis on the jail calls that he had done all of his laundry recently at his house, the red one.

26. Officers contacted COFEY's landlord and learned that he was renting another apartment at 1215 Bunnell St., Apartment #5. Apartment #5 is a red building.

27. On April 5, 2024, officers served search warrants at Alaska Mini Storage, 1010 Wembley Ave., Building 5, Unit 9, and also at 1215 Bunnell St., Apartment #5.

28. In the storage unit, officers found approximately $35,020 in U.S. currency. The currency was stored inside of Ziplock bag and also wrapped in clear tape, which is a common packaging method by persons involved in drug trafficking. Officers seized the currency.

29. In the storage unit, officers also found approximately 14.25 gross kilograms of marijuana.

30. Officers involved in this investigation know based on their training and experience that persons involved in drug trafficking often store their drugs and drug proceeds in storage units to protect it from robberies common in the drug trafficking world.

31. In Apartment #5, officers found over 1 gross kilogram of cocaine and a

*U.S. v. 2024 KTM 690SMC-R MOTORCYCLE, ET. AL.*
*VERIFIED COMPLAINT FOR FORFEITURE IN REM*

machine commonly used to pre-roll marijuana joints.

32. DEA noticed all of the assets comprising the Defendant *in rem* for forfeiture.

33. On May 15, 2024, COFEY pled guilty to a violation of AS 11.71.030(a)(9), Misconduct Involving a Controlled Substance in the Third Degree, based on one of the controlled purchases at his residence.

34. On June 14, 2024, DEA received a claim for the $16,350.00 in U.S. currency from Diehl-Lewis which included a receipt from MAC Federal Credit Union, dated February 21, 2024, showing a cash deposit of $17,925.00 and an immediate withdrawal of $17,900.00 of cash.

35. Diehl-Lewis stated in her claim that the cash that was seized from the safe was cash that she and COFEY had saved in two 5-gallon water jugs for 3 to 4 years and which had been deposited and withdrawn from her MAC Federal Credit Union account.

36. The $16,350.00 in U.S. currency that was seized from COFEY's safe was in mixed denomination, approximately as follows: 65 - $100's, 15 – $50's, 386 - $20's, 74 - $10's, 75 - $5's, 10 - $2's, 195 - $1's.

37. The $17,925.00 in U.S. currency that Diehl-Lewis deposited on February 21, 2024, was in mixed denominations. The $17,900.00 in U.S. currency that was withdrawn was in $100 dollar bills.

38. Officers involved in this investigation know based on their training and experience that persons involved in drug trafficking often receive proceeds of drug trafficking in a variety of denominations of U.S. currency. It is also common for individuals that deal in controlled substances to take mixed denominations of U.S. currency received

in exchange for controlled substances to banks and convert the mixed denominations into $100 dollar bills to conceal large amounts of U.S. currency more easily and to send payments for purchase of the controlled substances via mail or bulk transportation.

39. Following receipt of the claim, officers determined that Diehl-Lewis is associated with three accounts at MAC Federal Credit Union.

40. Officers obtained records for the three accounts for the time period January 2023 to June 2024. Two accounts (ending in account numbers 90 and 57) were in Diehl-Lewis's name and one (ending in account number 54) was for a juvenile child that Diehl-Lewis has access to.

41. In the 90 account, Diehl-Lewis receives payment from her employer, ACH Foundation HLTH which is a part of Fairbanks Memorial Hospital, of approximately $1,345.00 bi-weekly. Diehl-Lewis has stated that this is her employer and that she has no other employment. From the 90 account, every month a withdrawal of approximately $1,572.00 was sent to Jillian Square Apartments for rent for Diehl-Lewis's apartment.

42. From January 1, 2023, to June 30, 2024, approximately $51,597.03 of cash/CashApp deposits were made to the 90 account. During the same time period approximately $24,550.00 in cash was withdrawn. This amount, $24,550.00, includes the $17,900.00 of cash withdrawn on February 21, 2024.

43. Officers involved in this investigation know based on their training and experience that drug traffickers often utilize friends and family to deposit large amounts of cash drug proceeds into accounts of the friends and family to hide drug proceeds.

44. In the 90 account, three large deposits were made, two by check and one by

a wire transfer. The first check was for approximately $25,699.11, the second check was for approximately $85,316.93, and the wire transfer was for approximately $107,364.78. Records appear to indicate that this money was utilized for living expenses and it appears no large cash withdrawals were made in relation to these deposits.

45. From January 1, 2023, to June 30, 2024, approximately $26,317.00 of cash/CashApp were deposited into the 57 account. During the same time period, approximately $1,775.00 was withdrawn in cash.

46. In the 54 account, an additional deposit of $200.00 bi-weekly is made from Diehl-Lewis's employer, ACH Foundation Health. This would make Diehl-Lewis's total bi-weekly pay approximately $1,545.00 or approximately $40,170.00 per year.

47. Diehl-Lewis told officers that COFEY is unemployed and that she pays COFEY's rent in cash for the 1215 Bunnell Street, Apt. 31, residence in the amount of $1,000 per month. COFEY's landlord told offices that the rent was $1,100 per month and that COFEY paid in cash.

48. Diehl-Lewis also claimed the motorcycle. She stated that: "My motorcycle had nothing to do with what [COFEY] had plead guilty to" and included the title for the motorcycle in her name.

49. On July 8, 2024, DEA received a claim from Diehl-Lewis for the $35,020 in U.S. currency.

50. In her claim, Diehl-Lewis stated that: "While going through the documents I have included, you will notice that I w/draw sums of cash for me to keep on hand." and "I have included copies of my cash withdrawals from my Federal Credit Union."

*U.S. v. 2024 KTM 690SMC-R MOTORCYCLE, ET. AL.*
*VERIFIED COMPLAINT FOR FORFEITURE IN REM*

8

51. Included with her claim were records from various MAC Federal Credit Union accounts appearing to show various cash withdrawals between 2018 and 2024.

52. Neither COFEY nor Diehl-Lewis is licensed by the State of Alaska to sell marijuana.

53. Defendant *in rem* is presently in the possession, custody, or control of the United States and is not presently subject to any judicial restraining order.

54. Defendant *in rem* is currency that was likely furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, money used or intended to be used to facilitate the sale and exchange of a controlled substance, and/or property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the federal drug laws.

55 Defendant *in rem* is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

## IV. CLAIM FOR RELIEF

WHEREFORE, Plaintiff United States of America prays that:

A. A Warrant *In Rem* issue for the arrest of Defendant *in rem*;

B. That due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

C. That judgment be entered declaring Defendant *in rem* be forfeited to the United States of America for disposition according to law, and

D. For such relief as this Court may deem just and proper, together with the costs and disbursements of this action.

RESPECTFULLY SUBMITTED this 27th day of August 2024, in Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

s/ Seth M. Beausang
SETH M. BEAUSANG
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2024
a true and correct copy of the foregoing
was served via certified mail on the following:

Ike Deangelo Cofey Sr.
2990 Davis Road
#E-27
Fairbanks, AK 99709

Ike Deangelo Cofey Sr.
1215 Bunnell Street, Apt. 31
Fairbanks, Alaska 99701

Leslie Diehl-Lewis
2990 Davis Road
#E-27
Fairbanks, AK 99709

Leslie Diehl-Lewis
1215 Bunnell Street, Apt. 31
Fairbanks, Alaska 99701

s/ Seth Beausang
Assistant United States Attorney

# **VERIFICATION**

I, Sean Greninger, hereby verify and declare under the penalty of perjury that I am employed as a Special Agent employed by the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture In Rem and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief. The sources of my knowledge and information and the grounds for my belief include official files and records of the United States, publicly available files and historical information, files and records compiled by local and state law enforcement agencies, information supplied to me by other law enforcement officers and other witnesses, as well as my investigation in this case, together with others, as well as my training and experience.

_____
Sean Greninger
Special Agent
Drug Enforcement Administration

Declarations have the same legal force as affidavits. 28 U.S.C. § 1746